QUESTION:
Can the board of county commissioners, in its discretion, pay, from public funds, attorneys' fees and costs of suit incurred by deputy sheriffs acting as jailers for St. Lucie County when prosecuted by the Justice Department of the United States in a federal district court for violating the civil rights of jail inmates by placing them in jail facilities furnished by St. Lucie County, which they were ordered to so use by the sheriff of St. Lucie County, and when the trial jury found each of them "not guilty" of every charge in every count of the indictment?
SUMMARY:
In the absence of statutory authority, county funds may not be used to reimburse jailers for the expense of defending themselves against a federal grand jury indictment seeking to hold them criminally liable for violating the civil rights of jail inmates.
It has been uniformly ruled by this office that public funds may not be used to reimburse a public official for the expense of defending himself against a criminal charge. In AGO 071-253 I discussed this question in considerable detail and concluded that, in the absence of a statute expressly so providing, public funds may not be used to reimburse a public official for the expense of defending a criminal charge arising out of his official actions, even though he was found not guilty of such charge. It was pointed out therein that, ordinarily, a public official who defends himself on a charge of crime benefits nobody but himself, and any expenditure for this purpose is "for the purely personal and private purpose of keeping himself out of jail," quoting Schieffelin v. Henry 206 N.Y.S. 1972, (1924). Accord: Attorney General Opinion 069-40, reaffirming the principle that county funds may be used only for the purpose of accomplishing county purposes and meeting obligations incurred in carrying out county purposes, and noting that "the right of an officer to compensation, for expenses incurred by him in the performance of his official duty, must be found in a provision of the constitution or a statute conferring it either directly or by necessary implication. . . ," quoting 67 C.J.S. s. 91, p. 329. (See also Art. II, s. 5, State Const., providing that the duties and compensation of state and county officers must be fixed by law.) It was observed also that statutes authorizing reimbursement for such an expense usually operate prospectively only, the effect of the statute being that "the conditional promise to reimburse contained therein is regarded as a part of the compensation which the state, city, or town . . . stipulates that an officer is to receive in return for services to be rendered," quoting Schieffelin v. Henry, supra.
The fact that the employees in question were carrying out the orders of their superior officer, the sheriff, in operating allegedly inferior jail facilities does not make the defense of the criminal action brought against them a "county purpose." The defense of a criminal charge against the sheriff, or the county commissioners, arising out of such an operation, would not have been for a county purpose under the rulings referred to above. A fortiori, the defense of the employees cannot be so characterized.
It is noteworthy that the legislature has expressly provided for the payment of the defense of any warden, sheriff, or deputy sheriff employed by a county "in any civil suit arising out of the performance of his duties" (Emphasis supplied.) and for the indemnification of any such person in the event judgment is rendered against him. Section 111.06, F.S. See also s. 111.07, F. S., authorizing the use of public funds to defend officers and employees of state agencies and of political subdivisions of the state in tort actions based on the negligence of such officers and employees arising out of and in the scope of their employment, "unless such officer or employee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."
Several legislative sessions have come and gone since the opinion of my predecessor in office in AGO 069-49, supra, was adopted, and two sessions have been held since the ruling in AGO 071-253 was made. However, no statute authorizing the use of public funds in defending officers and employees against criminal charges arising out of the performance of their public duties has been adopted; and, in accordance with the rule ordinarily followed by this office in similar circumstances, a departure from the official rulings previously made would be unwarranted and unjustified.
This is especially true in light of the fact that the propriety of the general rule followed in those opinions appears to have been judicially affirmed by the Second District Court of Appeal in a case involving a former member of the Citrus Commission who was indicted by a grand jury for conspiracy, forgery, and grand larceny allegedly committed by him in carrying out his official duties. When the criminal charges against him were dismissed, he sought reimbursement from Citrus Commission funds for the cost of defending himself against the charges. In a letter dated November 9, 1971, this office advised the chairman of the Citrus Commission that, under the general rule followed in AGO's 069-40 and 071-253, Commission funds should not be used for that purpose. And in State of Florida v. Huff, Case No. 73-731, opinion filed February 8, 1974, the Second District Court of Appeal took a similar view when it reversed the trial court's ruling that the member was entitled to recover the costs of his successful legal defense from Citrus Commission funds.
Your question is, therefore, answered in the negative.